# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CINDY M. HERRERA,

       Plaintiff,

      vs.                               Civ. No. 18-1080 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record
(Doc. 17) filed January 23, 2019, in support of Plaintiff Cindy M. Herrera's Complaint (Doc. 1)
seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security
Administration, denying Plaintiff's claim for disability insurance benefits under Title II of the
Social Security Act, 42 U.S.C. § 401 *et seq*. On April 1, 2019, Plaintiff filed her Motion to
Reverse and Remand for a Rehearing With Supporting Memorandum. Doc. 18. The
Commissioner filed a Response on May 30, 2019 (Doc. 20), and Plaintiff filed a Reply on July
17, 2019 (Doc. 23). The Court has jurisdiction to review the Commissioner's final decision
under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the
applicable law and being fully advised in the premises, the Court finds the Motion is not well
taken and is **DENIED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17,
2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure
25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all
proceedings and to enter an order of judgment. Docs. 3, 7, 8.

## Background and Procedural Record

Claimant Cindy M. Herrera suffers from the following severe impairments: post-traumatic stress disorder ("PTSD"), panic disorder without agoraphobia; major depressive disorder; borderline personality disorder; generalized anxiety disorder; phobias; fibromyalgia; asthma; chronic pain syndrome; lumbar radiculopathy, cervical stenosis, and sacrodynia. Administrative Record ("AR") at 125. She has a high school diploma and attended a few weeks of community college. AR 189-90, 592. She has past relevant work as a bookkeeper and cashier. AR 198, 243.

On May 20, 2013, Ms. Herrera filed concurrent claims of disability under Title II and Title XVI of the Social Security Act. AR 250, 353. She alleges that she became disabled as of November 1, 2006. AR 353. Her applications were denied on October 23, 2013 (AR 314-15), and upon reconsideration on June 10, 2014 (AR 348-49). Administrative Law Judge ("ALJ") Kim Fields conducted a hearing on February 10, 2016. AR 188-201. Ms. Herrera appeared in person at the hearing with attorney representative Michael Armstrong. *Id*. The ALJ took testimony from Ms. Herrera; Richard Adams, MD, Medical Expert; and Charles Edward Smith, Vocational Expert ("VE"). AR 178.

On March 25, 2016, ALJ Fields issued an unfavorable decision. AR 353-66. On April 27, 2017, the Appeals Council issued a decision granting Ms. Herrera's request for review and remanding the case for further proceedings. AR 374-75. On January 12, 2018, Ms. Herrera appeared for a second hearing before ALJ Eric Weiss with attorney representatives Scott Rode and Laura Johnson. AR 202, 731. ALJ Weiss also heard from VE Mary Weber. AR 202. At the hearing, the ALJ recognized that Ms. Herrera had amended her alleged onset date to December 1, 2011. AR 210. ALJ Weiss issued an unfavorable decision on March 27, 2018. AR 122-36. The

Appeals Council denied a timely request for review on September 20, 2018, making the ALJ's decision the final decision of the Commissioner. AR 1-4. On November 19, 2018, Ms. Herrera timely filed a Complaint seeking judicial review. Doc. 1. Because the parties are familiar with Ms. Herrera's medical history, the Court reserves discussion of the medical records relevant to this appeal for its analysis.

## Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

(3)      At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)      If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)      If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166

(10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

<u>Analysis</u>

In support of her Motion to Remand, Ms. Herrera argues that the ALJ: (1) impermissibly engaged in "picking and choosing" among the assigned limitations in the state agency non-examining consultants' opinions; (2) failed to sufficiently credit the opinion of her treating physician, Dr. Roxana Raicu; and (3) failed to state sufficient reasons for discounting her subjective symptom evidence related to pain caused by her fibromyalgia. The Court does not find these arguments compelling and affirms the ALJ's decision.

**I.      The ALJ Did Not Improperly Disregard The State Agency Consultants' Opinion.**

State agency consultant Cathy Simutis, Ph.D, evaluated Ms. Herrera's medical records on October 23, 2013. AR 250-81. Dr. Simutis reviewed and discussed the medical evidence and, in answering questions relating to Ms. Herrera's mental residual functional capacity assessment ("MRFCA"), assessed in worksheet format the following "moderate limitations"[4]:

- Remembering locations and work-like procedures;

---

[4] As Ms. Herrera points out, Dr. Simutis did not use special Form SSA-4734-F4-SUP. Doc. 18 at 15 n.17. That form contains three sections, one of which is a worksheet for rating functional limitations (Section I) and another which is for recording the mental RFC determination (Section III). Instead, she used an MRFCA form which contains the same worksheet questions and the same rating system. AR 261-63. The instructions explain: "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion." AR 261. As such, the structure of the form used here is essentially the same as the structure of Form SSA-4734-F4-SUP: the consultant answers questions on the worksheet to indicate degrees of various functional limitations (the equivalent of Section I) and then uses this, and other, information to determine a claimant's mental residual functional capacity assessment set forth in the narrative discussion (the equivalent of Section III). Case law discussing "Section I" and "Section III" therefore remains relevant.

- Understanding and remembering very short and simple instructions;

- Carrying out very short and simple instructions;

- Maintaining attention and concentration for extended periods;

- Completing a normal workday or workweek without interruption from psychologically based symptoms and performing at a consistent pace without unreasonable rest periods; and

- Accepting instructions and responding appropriately to criticism from supervisors; and

- Being aware of normal hazards and taking appropriate precautions.

AR 261-63. Dr. Simitus found that Ms. Herrera was markedly limited in

- Understanding and remembering detailed instructions;

- Carrying out detailed instructions; and

- Interacting appropriately with the general public.

AR 261-63. In her narrative explanation, Dr. Simitus concluded that Ms. Herrera

> is able to perform work where interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote, few variables, little judgment, supervision required is simple, direct and concrete (unskilled).

AR 263. Dr. Simitus' findings were affirmed by Dr. Donald Gucker, Ph.D. on reconsideration.

AR 342.

The ALJ accorded the opinions of Dr. Simitus and Dr. Gucker "great weight" at step four because "[t]hese physicians are familiar with Agency policy and regulations and provided a detailed functional assessment of the claimant's abilities and limitations." AR 133. "Further, although rendered in 2013 and 2014, subsequent evidence is consistent with this analysis and, if anything, shows improvement in the claimant's functioning, based on mental status examination findings noted above." *Id.* In relevant part, the ALJ calculated Ms. Herrera's RFC as follows:

> She must avoid more than occasional exposure to extreme cold, unprotected heights, and dangerous moving machinery, and must avoid more than occasional

exposure to pulmonary irritants such as dust, fumes, odors and gases. She is able to understand, remember, and carry out simple instructions, and make commensurate work related decisions in a work setting with few, if any, changes. She is able to interact occasionally with supervisors, co-workers and the public, and maintain concentration, persistence and pace for two hours at a time during the workday with normally scheduled breaks.

AR 127.

Ms. Herrera argues that the ALJ thus engaged in prohibited "picking and choosing" of the limitations in the opinions of Dr. Simitus and Dr. Gucker without explanation. Doc. 18 at 14. She invokes the Tenth Circuit's holding in *Haga v. Astrue* that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." 482 F.3d 1205, 1208 (10th Cir. 2007); *see* Doc. 18 at 14. In *Haga*, a state agency examining psychological consultant reviewed the record and recommended additional testing for the claimant. 482 F.3d at 1207. The ALJ agreed and the doctor did his additional tests. *Id.* "[P]art of his detailed response was to fill out a mental RFC form, on which he marked appellant moderately impaired in seven out of ten functional categories." *Id.* While the ALJ's RFC incorporated three of these moderate limitations, it did not incorporate the other four. *Id.* Further, the ALJ did not provide an explanation for rejecting the remaining four moderate limitations and "the evidence on which the ALJ explicitly relied in his decision [did] not imply an explanation . . . ." *Id.*

On appeal, the Tenth Circuit noted "it is simply unexplained why the ALJ adopted some of [the doctor]'s restrictions but not others." *Id.* at 1208. Although an "ALJ is entitled to resolve any conflicts in the record," the court stressed that an ALJ must actually identify the evidence that conflicts with the doctor's medical opinion or RFC assessment. *Id.* The Tenth Circuit reinforced this point later that same year when it applied *Haga* to remand where the "ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by . . . a

nonexamining physician, but rejecting others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007).

When a doctor who assesses Section I moderate limitations also opines on a claimant's residual functioning capacity, however, the ALJ does not necessarily need to accept or discuss each moderate limitation. This limitation of *Haga* and *Astrue*'s scope comes from the Tenth Circuit's decision in *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016).[5] In *Smith*, the consulting doctor reviewed the claimant's records and completed a worksheet finding that she had moderate limitations in her ability to:

- maintain concentration, persistence, and pace,

- remain attentive and keep concentration for extended periods,

- work with others without getting distracted,

- complete a normal workday and workweek without interruption for psychologically based systems,

- perform at a consistent pace without excessive rest periods,

- accept instructions and respond appropriately to criticism by supervisors,

- get along with coworkers or peers without distracting them or engaging in behavioral extremes,

- respond appropriately to changes in the workplace, and

- set realistic goals or independently plan.

*Id.* at 1268.

Although the doctor found moderate limitations in nine Section I categories, in forming the claimant's mental residual functional capacity the doctor simply opined that the claimant

---

[5] In her reply brief, Ms. Herrera describes this case as "unpublished." Doc. 23 at 3. That is incorrect. It is published, binding precedent.

could "(1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ, in turn, assessed that the claimant "could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit held that, although the ALJ "did not repeat the moderate limitations assessed by the doctor," affirmance was proper because the ALJ "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.*

*Smith* relied on *Vigil v. Colvin*, in which the court held that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently taken into account by a restriction to unskilled work. *Id.* (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). The ALJ in *Vigil* found that the claimant was moderately limited in the ability to maintain concentration for extended periods. 805 F.3d at 1203. But the ALJ further found that the claimant "retained enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04 (alteration omitted). Because the limitation was "not critical" to the performance of unskilled work, the ALJ's RFC appropriately accounted for claimant's limitations. *Id* at 1204. In particular, "limiting the plaintiff to an SVP[6] of only one or two[] adequately took into account his moderate limitations in concentration, persistence, and pace." *Id.*

---

[6] The specific vocational preparation ("SVP") "refers to the 'time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil*, 805 F.3d at 1201 n.2 (quoting the Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991), 1991 WL 688702 (G.P.O.)). "A job at SVP one requires 'a short demonstration only' and at SVP two requires 'anything beyond a short demonstration up to and including 1 month.'" *Id.* "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

*Smith*, 821 F.3d at 1269, also favorably cited an unpublished case, *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015). In *Lee*, the ALJ adopted, "essentially verbatim, the limitations from Section III of the MRFCA." 631 F. App'x at 541. The court held that "[h]aving adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I." *Id.* Other unpublished opinions from the Tenth Circuit have affirmed the ALJ based on similar reasoning. *See, e.g.*, *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015).

Finally, the Tenth Circuit in *Smith* expressly stated that asking "how the administrative law judge's assessment incorporates the numerous moderate limitations indicated by [the doctor] . . . is the wrong question." 821 F.3d at 1269 n.2. The doctor's Section I notations, the Tenth Circuit explained, "serve[] only as an aid to her assessment of residual functional capacity." *Id.* The reviewing court is to "compare the administrative law judge's findings to [the doctor]'s opinion on residual functional capacity, not her notations of moderate limitations." *Id.*

The implications of this reasoning can best be understood by examining one of the Section I limitations discussed in *Smith*: a "moderate" limitation in the ability to "work with others without getting distracted." *Id.* at 1268. Unlike the situation in *Vigil*, the absence of discussion about this moderate limitation in the ALJ's decision cannot be accounted for by simply limiting a claimant to unskilled work. This is because the ability to "work in coordination with or proximity to others without being (unduly) distracted by them" is "critical for performing unskilled work." POMS § DI 25020.010, § B(3)(g).[7] Yet, even though the ALJ never discussed

---

[7] The Social Security Administration Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172

this moderate limitation and this moderate limitation cannot be accounted for through the limitation of the claimant to unskilled work, the Tenth Circuit in *Smith* rejected the claimant's argument that the ALJ's failure to address this moderate limitation constituted error.

Given that moderate limitations matter (*Haga*, 482 F.3d at 1208, made clear that "a moderate impairment is not the same as no impairment at all"), the question arises as to when the absence of ALJ discussion about a Section I moderate limitation requires remand (as in *Haga* and *Frantz*) and when the absence of ALJ discussion about a Section I moderate limitation constitutes no error. One situation that constitutes no error is when the ALJ justifiably gives the doctor's opinion little to no weight. SSR 96-6p, 1996 WL 374180, at *2 ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."). *Vigil* makes clear that another situation is when the assignment to unskilled work incorporates or otherwise accounts for the Section I moderate limitation. *Smith* demonstrates that yet another situation is when the doctor who assessed the Section I moderate limitation has also reached an opinion on residual functional capacity in his or her Section III/narrative discussion, which the ALJ then accepts.

In this respect, *Smith* deviated from unpublished Tenth Circuit cases that called for the consulting doctor to carefully adhere to Section I worksheet limitations when fashioning a narrative RFC. For example, in *Carver v. Colvin*, the Tenth Circuit held that an ALJ may not "turn a blind eye to moderate Section I limitations," and "[i]f a consultant's Section III narrative

_____

F.3d 764, 766 (10th Cir. 1999). The reviewing court will defer to the POMS provisions unless they are arbitrary, capricious, or contrary to law. *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001); *see also Vigil*, 805 F.3d at 1204 (relying on the POMS' definition of unskilled work).

fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." 600 F. App'x 616, 619 (10th Cir. 2015).[8]

Ms. Herrera cites the opinion of other judges in this District who have declined to follow *Smith* on the ground that it is inconsistent with *Haga* and *Frantz*, and one panel of the Tenth Circuit cannot overrule another panel. Doc. 18 at 15 (citing *Cordova v. Berryhill*, No. 17-cv-611-SMV, 2018 WL 2138647, at *7 (D.N.M. May 9, 2018)); *see also Jones v. Berryhill*, No. 15-cv-842-LF, 2017 WL 3052748, at *5 n.6 (D.N.M. June 15, 2017). This Court does not agree that *Smith* is irreconcilable with *Haga* and *Frantz*. *Haga* and *Frantz* continue to stand for the proposition that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." 482 F.3d at 1208. But they do not specify what exactly constitutes the doctor's ultimate "opinion" when a doctor has checked boxes on a form (Section I), the significance of which is then clarified through the doctor's narrative opinion about a claimant's RFC (Section III). Unlike in *Smith*, the panels in *Haga* and *Frantz* did not consider a doctor's narrative RFC opinion and so had no occasion to opine about how Section I moderate limitations should be evaluated in light of a doctor's narrative RFC opinion.

*Haga* and *Frantz* therefore did not address the question *Smith* answers—whether an ALJ is permitted to rely on the doctor's ultimate opinion as expressed in the narrative RFC, when that

---

[8] Ms. Herrera also cites a previous opinion by this Court which held that a consulting physician must account for all worksheet moderate limitations in his narrative RFC, and the ALJ may not overlook inconsistencies between the two. Doc. 18 at 17; *Vamvakerides v. Colvin*, No. 14-cv-879 SCY, 2016 WL 10538097 (D.N.M. Apr. 7, 2016). As explained above, cases like *Vamvakerides* and *Carver* cannot be reconciled with the subsequent published Tenth Circuit opinion in *Smith*.

RFC does not exactly match the doctor's own Section I worksheet limitations. As *Smith* explains, the doctor need not make sure the narrative and the worksheet exactly match. When the doctor fashions an RFC in his narrative opinion, that controls over any moderate worksheet limitations because the worksheet serves as an "aid" to an opinion and is not the opinion itself. *Smith*, 821 F.3d at 1269 n.2.

Based on *Smith*, the Court rejects Ms. Herrera's argument that the ALJ was required to either adopt all of Dr. Simitus' moderate limitations or explain, for each moderate limitation, why he did not adopt that limitation. Doc. 18 at 14-15. *Smith* mandates affirmance with respect to the moderate limitations because Dr. Simitus' narrative RFC and the ALJ's RFC are consistent. Dr. Simitus opined that Ms. Herrera is capable of tasks "learned and performed by rote," with "few variables" and requiring "little judgment," *i.e.*, "unskilled" work. AR 263. The ALJ found that Ms. Herrera "is able to understand, remember, and carry out simple instructions, and make commensurate work related decisions in a work setting with few, if any, changes." AR 127. He also found she could perform representative jobs with an SVP of 2, *i.e.*, unskilled. AR 135. Indeed, Ms. Herrera acknowledges in her Motion that "when ALJ Weiss weighed the opinion evidence," he incorporated Dr. Simutis' narrative. Doc. 18 at 15. Under *Smith*, the Court finds that this is all that is required.

While this reading of *Smith* addresses the moderate limitations at issue, Ms. Herrera argues that it does not address her assessed marked limitations. Ms. Herrera asserts that *Smith* does not necessarily apply to "marked" limitations assigned by the consulting state agency doctors. Doc. 23 at 3-4. Ms. Herrera raises a valid issue. The consulting doctor in *Smith* did not assign any marked limitations and the court's holding expressly applied only to moderate limitations. 821 F.3d at 1268-69 ("The administrative law judges in *Lee* and in our case did not

repeat the *moderate* limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities. This approach is acceptable in our circuit, for we have held in a published opinion that an administrative law judge can account for *moderate* limitations by limiting the claimant to particular kinds of work activity." (emphasis added)). Therefore, *Smith* does not necessarily foreclose Ms. Herrera's argument that the ALJ, if he accepted Dr. Simitus' opinion, had to account for the *marked* limitations she assigned.

The Court does not need to determine to what extent *Smith*'s logic would apply to marked limitations, however, because it agrees with the Commissioner that the ALJ *did* account for all the marked limitations. The marked limitations in understanding, remembering, and carrying out *detailed* instructions are readily accounted for by the ALJ's finding that Ms. Herrera "is able to understand, remember, and carry out *simple* instructions." AR 127 (emphasis added); *see also Vigil*, 805 F.3d at 1203-04 (because that the nonexertional limits in question affected the claimant's ability to perform detailed tasks, but not simple ones, an RFC for unskilled work accounted for those limitations); *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) ("Even though Dr. Taber noted marked limitations in Ms. Nelson's ability to remember detailed instructions [and] carry out detailed instructions . . . unskilled work does not require these abilities . . . .").

Ms. Herrera focuses on the marked limitation in interacting with the general public. Doc. 18 at 16-17. She argues that the ALJ's limitation to "occasional" interaction with the general public is not sufficient to account for Dr. Simitus' "marked" limitation in that area. *Id.* In addition, Dr. Simitus opined in her narrative that Ms. Herrera "is able to perform work where interpersonal contact is incidental to work performed" and "supervision required is simple, direct

and concrete." AR 263. "Occasionally" does not mean "no" social interaction; it can mean anything from "occurring from very little up to one-third of the time," but generally "no more than 2 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

In support of her argument, Ms. Herrera cites *Knowlton v. Berryhill*, No. 18-cv-194 KBM, 2019 WL 1299669, at *7 (D.N.M. Mar. 21, 2019). Doc. 18 at 17. In *Knowlton*, Magistrate Judge Molzen held that an RFC allowing for "occasional interactions with . . . the general public" does not account for a *marked* limitation assigned by a state agency consultant. 2019 WL 1299669, at *7. But as the Commissioner points out, Doc. 20 at 10-11, *Knowlton* actually supports affirmance in this case because Judge Molzen also found that an ALJ may "properly account[] for the marked limitation" if "the RFC also limited the plaintiff to *unskilled* work." 2019 WL 1299669, at *7. That is because "unskilled work does not require *any* interaction with the general public." *Id.* (internal quotation marks omitted). In *Knowlton*, Judge Molzen reversed the ALJ and remanded back to the agency because the ALJ did not limit that claimant to unskilled work. *Id.* By contrast, the ALJ in this case did identify unskilled work that Ms. Herrera can perform that requires no interaction with the general public. AR 135.[9]

Published Tenth Circuit law on this issue is inconclusive. In *Chapo v. Astrue*, the Tenth Circuit reversed and remanded an ALJ's evaluation of the opinion of a doctor who assigned the

---

[9] Ms. Herrera argues that the ALJ did not actually limit her to unskilled work in the RFC. Doc. 23 at 5. To the extent that Ms. Herrera argues that the ALJ was required to use the exact phrase "unskilled work" in the RFC to account for Dr. Simitus' marked limitation, the Court disagrees. The RFC specifies that Ms. Herrera "is able to understand, remember, and carry out simple instructions, and make commensurate work related decisions in a work setting with few, if any, changes." AR 127. This mirrors the definition of unskilled work promulgated by the Administration. SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). And the ALJ identified jobs which Ms. Herrera can perform in the national economy that are all "unskilled" with an SVP of 2. AR 135. It is clear that the ALJ did limit Ms. Herrera to unskilled work, even if that exact phrase does not appear in the RFC.

claimant, among many other non-exertional limitations, a "[m]arked to extreme limitation on ability to interact appropriately with the general public." 682 F.3d 1285, 1290 (10th Cir. 2012). In so doing, the Tenth Circuit observed that "the only mental restriction acknowledged in the hypothetical [to the VE] was that [the claimant's] work should be restricted to 'only occasionally dealing with the general public." *Id.* (alterations omitted). This restriction indicated that "[t]he ALJ accepted, at least to a limited extent, the restriction recognized by Dr. Vega with regard to Ms. Chapo's difficulty in dealing with the public." *Id.* at 1291-92. The Tenth Circuit did not further examine the meaning of "occasional" social contact; it reversed because the ALJ failed to include the restriction to unskilled work in the hypothetical to the VE. *Id.* at 1290 n.3.

An unpublished Tenth Circuit case is more on point and provides support for the Commissioner's argument. *Nelson v. Colvin*, 655 F. App'x 626 (10th Cir. 2016). The court in *Nelson* examined the definition of "unskilled work" provided in SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). "Unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting." 655 F. App'x at 629 (internal quotation marks and alterations omitted). The court concluded that "[e]ven though Dr. Taber noted marked limitations in Ms. Nelson's ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities." *Id.* The Court finds this reasoning persuasive and applicable to this case. *Nelson* is not in tension with *Chapo* because the *Chapo* decision did not examine to what extent unskilled work accounts for social interaction limitations.

Finally, the Court observes that the three jobs the ALJ identified all have a "People" code of 8—the lowest level of human interaction. Merchandise Marker (DOT 209.587-034), 1991 WL 671802; Warehouse Checker (222.687-010), 1991 WL 672130; and Routing Clerk (222.687-022), 1991 WL 672133. AR 135.[10] As the Tenth Circuit has found in a similar context, these jobs "require interaction with people only in the context of taking instruction and involve insignificant or no interaction with the general public." *Shelton v. Colvin*, 663 F. App'x 690, 694-95 (10th Cir. 2016).

The Court thus finds that the ALJ fully accounted for Dr. Simitus' opinion.

## II. The ALJ Gave Good Reasons For The Weight Assigned To The Opinion Of Ms. Herrera's Treating Physician

Ms. Herrera argues that the ALJ improperly disregarded functional assessments her treating physician, Dr. Roxanna Raicu, M.D., completed in 2016 and 2017. Doc. 18 at 18-22. Several different opinions by Dr. Raicu issued on three separate dates are relevant to this argument:

- On January 5, 2016, Dr. Raicu completed a Medical Assessment of Ability to do Work-Related Activities (Mental) ("MSS"). AR 1435-36. She considered Ms. Herrera's medical history from 2011 to the date of current examination. AR 1435. Dr. Raicu found Ms. Herrera had 8 moderate mental limitations. AR 1435-36. On this same date, Dr. Raicu also found that Ms. Herrera met the listing criteria for 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders. AR 1437-38. These will be referred to as the "January 2016 MSS opinion" and "January 2016 listing opinions."

- On May 20, 2016, Dr. Raicu found that Ms. Herrera met the listing criteria for 12.08 Personality Disorders. AR 1465. This is the "May 2016 listing opinion."

---

[10] Ms. Herrera obliquely challenges her ability to perform these jobs because they all have a "reasoning level" of two. Doc. 19 at 16 n.19. The "reasoning development scale" measures the educational background required of a position. *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013). Ms. Herrera does not explain what about her educational background is in conflict with the identified jobs. Doc. 19 at 16 n.19. The Court considers this argument waived for failure to develop it.

- Finally, on December 11, 2017, Dr. Raicu completed another MSS which covered Ms. Herrera's medical history from 2011 to the current date. AR 1736-37. She found 4 marked and 14 moderate mental limitations. AR 1736-37. On the same date, Dr. Raicu also found that Ms. Herrera met the listing criteria for 12.04 Affective Disorders, 12.06 Anxiety-Related Disorders, and 12.08 Personality Disorders. AR 1738-49. These are the "2017 MSS opinion" and "2017 listing opinion."

The ALJ found that "some weight has been accorded to the opinions of treating physician, Dr. Raicu, based on her treatment relationship with the claimant, consisting of medication management sessions every three months." AR 132 (citations omitted). His explanation for this determination is lengthy and is found in two separate sections of his opinion. He begins:

> In January 2016, Dr. Raicu completed a functional assessment indicating some limitations. Dr. Raicu found that the claimant had only a slight limitation in her ability to understand, remember and carry out short and simple instructions, make simple work-related decisions, sustain an ordinary routine without special supervision, interact appropriately with supervisors, co-workers and the public, and respond appropriately to changes in the workplace. Dr. Raicu opined that the claimant had moderate limitations in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, work in coordination with or proximity to others, and perform at a consistent pace. However, despite this detailed functional assessment showing only slight and moderate limitations, Dr. Raicu then indicated that the claimant's impairments were severe enough to meet listings for depression, anxiety and personality disorder. This is internally inconsistent.

> As noted above, the medical evidence from 2016 and 2017 reveals improvement and benign findings on mental status examination. Inexplicably, a second assessment from Dr. Raicu in December 2017 reveals a decline in functioning, with moderate limitation in all areas of understanding and remembering information and in concentration, persistence and pace. Even more unexplained is a worsening from slight limitations in social functioning in the prior assessment, to marked limitations in social functioning areas in this assessment, with no explanation or support in treatment records. Again, Dr. Raicu found that the claimant's mental illness met listings for depression, anxiety and personality disorder.

AR 131-32 (citations omitted). He continues later in the opinion:

> [A]s noted above, these assessments are internally inconsistent. For example, the January 2016 assessments finds slight and moderate limitations in areas of

functioning, but then goes on to say the severity of the claimant's impairments meet listings for depression, anxiety, and personality disorder. It is clear from this inconsistency that Dr. Raicu is not familiar with and does not fully understand Agency policy and regulations. Additionally, these assessments are forms provided the by claimant's representative, consisting of checkboxes, with no additional explanation for rationale of limitations assigned. Interestingly, there is no checkbox for "no limitations," and "slight limitation" is the least restriction permissible, possibly skewing the analysis. As noted above, the assessments completed by Dr. Raicu are not supported by her own treatment records, showing benign and normal findings on mental status evaluation. For instance, while treatment records from 2016 and 2017 indicate normal and benign findings, Dr. Raicu's second assessment in December 2017 notes even more severe functional limitations than her original assessment in January 2016. For all these reasons, Dr. Raicu's opinions are not given significant weight.

AR 132-33 (citations omitted).

The ALJ is required to evaluate every medical opinion he receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[11] as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An

---

[11] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330.[12]

The ALJ is not, however, required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed this as a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins*, 350 F.3d at 1301. The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

Ms. Herrera argues in her motion that the explanations the ALJ gave "were not legitimate or specific reasons to discount Dr. Raicu's assessments." Doc. 18 at 19 (emphasis removed). She

---

[12] Prior to March 27, 2017, the factors in the regulation were: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)-(6)).

raises three different points in support: (1) Dr. Raicu's assessments were not "internally inconsistent," Doc. 18 at 20; (2) the ALJ may not reject a treating physician's opinion merely because it is expressed on a form with checkboxes, Doc. 18 at 20-21; and (3) the ALJ's statement that Dr. Raicu's assessments were not supported by her own treatment records was too vague and inconsistently highlighted only the portions of the record that support a finding of non-disability. None of these arguments demonstrate the ALJ erred.

A.    Internal inconsistencies

Substantial evidence supports the ALJ's conclusion that Dr. Raicu's 2016 assessments are internally inconsistent. The first form the ALJ referred to is the January 2016 MSS opinion. AR 1435-36. The form instructs Dr. Raicu to give "an assessment of how the patient's mental/emotional capabilities are affected by the impairment(s)." AR 1435. It is broken down into the familiar nonexertional categories (understanding and memory; sustained concentration and persistence; social interaction; and adaptation). AR 1435-36. Under "concentration and persistence," Dr. Raicu assessed three "slight" limitations and five "moderate" limitations. AR 1346. On the same day, Dr. Raicu completed the 2016 listing opinions, i.e., forms for the listing criteria for 12.04, Affective Disorders and 12.06 Anxiety-Related Disorders. AR 1437-38. On those forms, she assessed that Ms. Herrera has "marked difficulties in maintaining concentration, persistence, or pace." *Id.* The ALJ also pointed out that Dr. Raicu assessed only "slight" limitations in social interaction functioning on the first form, AR 1436, but in the second, opined that Ms. Herrera suffers from "marked difficulties in maintaining social functioning." AR 1437-38.

Ms. Herrera argues that these are not inconsistent. She reasons that because several moderate limitations were found in several narrower categories, it is logical that together they would equate to a marked limitation in a broad category. Doc. 18 at 20. Given the deferential

substantial-evidence standard the Court must apply when reviewing an ALJ's decision, had the ALJ determined that the listing forms were not inconsistent with the MSS form, Ms. Herrera's reasoning might support such a conclusion. But the ALJ concluded the opposite, and this opposite conclusion is also subject to the deferential substantial-evidence standard. *Biestek*, 139 S. Ct. at 1156; *Pisciotta*, 500 F.3d at 1078. Instead of conducting a de novo review of the ALJ's findings, the Court must determine whether his findings are supported by "more than a mere scintilla" of evidence. *Biestek*, 139 S. Ct. at 1154. In doing so, the Court must ask whether the ALJ has identified an internal discrepancy that is "seemingly" inconsistent. *Pisciotta*, 500 F.3d at 1078. The Court answers this question in the affirmative. With regard to social interaction in particular, the record shows that Dr. Raicu stated on one form that Ms. Herrera has only slight to moderate limitations but then on a separate form she filled out the same day concluded that she is markedly limited. This is "seemingly inconsistent," as the ALJ explained at length.

Ms. Herrera additionally observes that the ALJ did not find that Dr. Raicu's 2017 opinions were internally inconsistent. Doc. 18 at 20. This is accurate, and thus the Court proceeds to evaluate the other bases for the ALJ's rejection of Dr. Raicu's opinion.

B.      Checkbox-style opinions

Ms. Herrera takes issue with the ALJ's reference to Dr. Raicu's opinions being expressed on a checkbox-style form. Doc. 18 at 20-21. The ALJ observed that Dr. Raicu's "assessments are forms provided the by claimant's representative, consisting of checkboxes, with no additional explanation for rationale of limitations assigned." AR 133. "Interestingly," he continued, "there is no checkbox for 'no limitations,' and 'slight limitation' is the least restriction permissible, possibly skewing the analysis." *Id.* Ms. Herrera argues that "an ALJ may not reject a treating physician's opinion merely because it was expressed on a form with checkboxes." Doc. 18 at 20 (emphasis removed).

If the ALJ had rejected Dr. Raicu's opinions *merely* because they are expressed on checkbox-style forms, Ms. Herrera would be correct. In the Tenth Circuit, the ALJ must examine whether checkbox-style forms are supported by the doctor's examinations of the patient or other clinical assessments before disregarding them. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008); *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012); *Andersen v. Astrue*, 319 F. App'x 712 (10th Cir. 2009). Here, the ALJ did so and concluded that "the assessments completed by Dr. Raicu are not supported by her own treatment records, showing benign and normal findings on mental status evaluation." AR 133. In other words, the ALJ did not give "checkbox-style findings" as the sole reason he rejected Dr. Raicu's opinion. Thus, the Court will move on to determine whether the additional reason the ALJ provided for discounting the weight given to Dr. Raicu's assessments is sufficient.

C.     Unsupported by treatment notes

The ALJ found that Dr. Raicu's assessments were unsupported by her own treatment notes. As noted above, the ALJ's discussion of Dr. Raicu's opinion is in two different places in his opinion:

> As noted above, the medical evidence from 2016 and 2017 reveals improvement and benign findings on mental status examination. Inexplicably, a second assessment from Dr. Raicu in December 2017 reveals a decline in functioning, with moderate limitation in all areas of understanding and remembering information and in concentration, persistence and pace. Even more unexplained is a worsening from slight limitations in social functioning in the prior assessment, to marked limitations in social functioning areas in this assessment, with no explanation or support in treatment records.

AR 131-32.

> As noted above, the assessments completed by Dr. Raicu are not supported by her own treatment records, showing benign and normal findings on mental status evaluation. For instance, while treatment records from 2016 and 2017 indicate normal and benign findings, Dr. Raicu's second assessment in December 2017 notes even more severe functional limitations than her original assessment in January 2016.

AR 133.

Ms. Herrera argues that these statements are "too vague" because they do not "indicate what specific instances in the record he referenced." Doc. 18 at 21 (emphasis removed); *see also* Doc. 23 at 8 (criticizing the ALJ for failing to provide citations to the record "in the section of ALJ Weiss' decision that explained the weight assigned to Dr. Raicu's opinion" (citing AR 132-33)). These criticisms are unfair. Prior to his assessment of Dr. Raicu's opinion, the ALJ extensively discussed the medical evidence regarding Ms. Herrera's mental impairments, with citations to the record. AR 130-31. To the extent Ms. Herrera is arguing that the ALJ was required to repeat or summarize this discussion again when discussing Dr. Raicu's opinion, that is not the case. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion."); *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018) ("While Mr. Webb takes issue with the ALJ's general reference to medical records 'all discussed above,' in this case it is not difficult to determine what inconsistencies the ALJ relied upon." (citation omitted)).

Ms. Herrera also argues that the ALJ ignored the medical evidence that is consistent with Dr. Raicu's assessments, choosing instead to focus only on the evidence that supports a finding of non-disability. Doc. 18 at 22. It is true that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). "The regulations require the ALJ to consider all evidence in the case record when he makes a determination or decision whether claimant is disabled." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(3)) (internal quotation marks and alterations omitted). However, while

"[t]he record must demonstrate that the ALJ *considered* all of the evidence," he "is not required to *discuss* every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (emphasis added). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* To meet her burden in this Court, Ms. Herrera must not only "point[] to evidence that she claims the ALJ failed to discuss," but also "say why it was significantly probative." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). The Court will not do so for her. *Id.*

The evidence Ms. Herrera highlights is as follows:

- On May 26, 2016, Dr. Raicu noted Ms. Herrera continued to have feelings of depression and went to the ER with a panic attack (AR 1499). Dr. Raicu found Ms. Herrera's panic disorders were "worsening" and added Buspirone to her medication regime (AR 1450).

- On February 8, 2017, Dr. Raicu noted Ms. Herrera was guarded about her family issues and worried about her physical impairments (AR 1624). Dr. Raicu found Ms. Herrera had anxiety and trust issues and was declining therapy (AR 1626).

- At medical visits on February 27, 2017 and October 25, 2017, Dr. Schwartz noted Ms. Herrera was "petrified about almost everything" and "deeply sad and frightened" upon psychological examination (AR 1755, 1757).[13]

Doc. 18 at 22.

By contrast, the ALJ discussed evidence that:

- Treatment records from Dr. Raicu from 2016 and 2017 reveal a stable condition, with improved benign findings on mental status examination. In February 2016, the claimant reported that she was "doing fairly well." She was dealing with situational difficulties like the stress of her son and her husband (citing AR 1495).

---

[13] These are notes from a different physician, Dr. Schwartz. It is therefore unclear that they belong in an argument about whether Dr. Raicu's opinion is supported by her own treatment notes. In any event, Ms. Herrera fails to acknowledge that the ALJ gave "little weight" to Dr. Schwartz's opinion, AR 132, a finding Ms. Herrera does not challenge in this Court.

- On a mental status evaluation in February and May 2016, the claimant exhibited normal speech, normal memory, logical and coherent thought processes, good concentration, age appropriate fund of knowledge, fair insight and judgment, an anxious/depressed mood, an appropriate affect, and she was oriented times four (citing AR 1495, 1499).

- In August 2016, while she presented with anxious/fearful thoughts, a depressed mood and diminished interest or pleasure, the claimant was oriented to time, place, person and situation, had appropriate behavior, a flat affect, and no memory loss or mood swings. She reported feeling anxiety due to her breathing issues, but indicated good help for her mental illness from her medications (citing AR 1616-18).

- On mental status examinations throughout 2017, the claimant consistently presented as oriented times four, with no agitation, an appropriate mood and affect, appropriate behavior, normal insight and judgment, and normal attention and concentration (citing AR 1620, 1622, 1626, 1630, and 1634).

AR 130-31.

The Court finds that the ALJ's reasons are supported by substantial evidence. During Ms. Herrera's February 2016 visit with Dr. Raicu, the record reveals that the ALJ was correct that she reported that she was "doing fairly well" and dealing with "situational difficulties." AR 1495. Dr. Raicu found her "stable or improved." AR 1496. The mental status examination was normal, except for an "anxious" mood. AR 1495. As for the May 2016 visit, Ms. Herrera is correct that the ALJ did not discuss Dr. Raicu's notes that Ms. Herrera continued to have feelings of depression and went to the ER with a panic attack, or that Dr. Raicu found Ms. Herrera's panic disorders were "worsening" and added Buspirone to her medication regime. Doc. 18 at 22; *see* AR 1499-1500. The Court finds, however, that there is nothing significantly probative in Dr. Raicu's treatment notes from the May 2016 visit that would require reversal due to the ALJ's failure to discuss it. Rather, Dr. Raicu's May 2016 notes are internally ambiguous: in addition to the findings Ms. Herrera highlights, Dr. Raicu also noted Ms. Herrera reported she was "doing fairly well," and the mental status examination was normal expect for a "depressed" mood, exactly as the ALJ noted. AR 131, 1499. Further, Dr. Raicu's treatment notes from the second

half of 2016 and in 2017 mitigate the concerns the May 2016 treatment notes might have supported.

In August 2016, Dr. Raicu reported that Ms. Herrera's "relieving factors are medication"; that "she reports good sleep with medications"; that "she reports good help from her medications"; and that she experienced "moderate improvement" in her "medication response." AR 1616, 1618. Again, the mental status examination was normal. AR 1617-18. In November 2016, Dr. Raicu again found that "[t]here is improvement of initial symptoms." AR 1620. The mental status examination was normal. AR 1622. In February 2017, Dr. Raicu again found improvement of initial symptoms. AR 1624. The mental status examination was normal. AR 1626. Although Ms. Herrera emphasizes that Dr. Raicu found that she "continues to struggle with anxiety and trust issues," Doc. 18 at 22, she fails to acknowledge that in the same sentence, Dr. Raicu opined that she is "maintaining well on current medications." AR 1626. In May 2017, there was still "improvement of initial symptoms." AR 1628. The mental status examination was normal. AR 1630. Dr. Raicu remarked that Ms. Herrera "is doing well and able to handle feelings of anxiety," although she "still worried about her son's addiction." AR 1630. In August 2017, there was still "improvement of initial symptoms" and the mental status examination was normal. AR 1632, 1634.

The Commissioner aptly remarks that "even [though] these notes undoubtedly still show the presence of symptoms, they undermine Dr. Raicu's opinions indicating that Plaintiff's symptoms *worsened* from January 2016 to December 2017." Doc. 20 at 13. This logic has obvious appeal. The ALJ's discussion of Ms. Herrera's treatment records is extensive and substantial evidence supports his finding that Dr. Raicu's assessments are undermined by her own clinical notes.

**III. The ALJ Gave Sufficient Reasons To Support His Evaluation Of Ms. Herrera's Fibromyalgia.**

Social Security Ruling ("SSR") 16-3p[14] instructs ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." 2016 WL 1119029, at *2. In evaluating whether a claimant has disabling pain, the reviewing court considers whether the claimant has proffered objective medical evidence of a pain-producing impairment; if so, whether there is a loose nexus between the claimant's subjective allegations of pain and the impairment; and if so, whether the claimant's pain is in fact disabling, considering both objective and subjective evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Id.*

The ALJs' assessments of subjective symptom complaints "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). While the Tenth Circuit has "insisted on objectively reasonable explanation over mere intuition," it has "not reduced [subjective symptom] evaluations to formulaic expressions." *Id.* at 909. The courts do not "'require a formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ need only "set[] forth the specific evidence he relies on in

---

[14] SSR 16-3p is applicable for decisions made on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186. SSR 16-3p eliminated the use of the term "credibility," in order to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2. The instructions for evaluating subjective allegations in both rulings are the same, so case law interpreting SSR 96-7p remains relevant. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017). In light of this change, the Court will use the term "subjective symptom evidence" when discussing past case law that refers to a claimant's "credibility."

evaluating the claimant's" subjective symptom evidence. *Id.* "Findings as to [subjective symptom evidence] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

SSR 12-2p "provides guidance on how [the administration] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM)." 2012 WL 3104869, at *1. "As with any claim for disability benefits, before we find that a person with FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id.* at *2. This "objective evidence" can only come from a treating physician. *Id.* A diagnosis alone is not enough; the treating physician must document that she reviewed the person's medical history and conducted a medical exam. *Id.* With respect to subjective symptom evidence, the Ruling explains that, once the presence of fibromyalgia is established, the claimant's subjective symptom evidence regarding that condition is evaluated just like any other subjective symptom evidence. *Id.* at *5.

At step two in this case, the ALJ found that Ms. Herrera has a medically determinable impairment of fibromyalgia that is severe. AR 125. At step three, the ALJ found that her fibromyalgia did not singly or in combination meet or equal any listing. AR 126. At step four, the ALJ described Ms. Herrera's subjective symptom evidence:

> She has reported pain and weakness. Pain affects her ability to perform most postural activities. She reported difficulty with performing household chores when in pain. However, the claimant and her husband also indicated that she was able to attend to selfcare tasks, cook simple meals, clean, do laundry, mop, shop, drive, read, and watch television.

AR 128 (citations omitted). But the ALJ found that Ms. Herrera is capable of performing a range of exertionally light work despite her impairments. *Id.* Regarding fibromyalgia specifically, the ALJ found:

> [T]here are no objective findings of muscle atrophy or deformity or loss of range of motion in any extremity or joint. The claimant does not require the use of an assistive device to ambulate, nor does she have a significant gait abnormality. Her cranial nerves, muscle function, and sensation have been intact on examinations. Mentally, the claimant has undergone counseling for many years, but has no hospitalizations, and has consistently been noted to be stable. She usually denies suicidal ideation or hallucinations, and there is no evidence of a thought disorder. She does not demonstrate a serious memory or attention deficit. She presented as alert and oriented during her mental status examinations. She admits that medications are helpful and control her symptoms. Her longtime psychiatrist, Dr. Raicu, also noted that the claimant has stable mood and only situational anxiety with improved control. The claimant is quite active despite her contentions that she is limited by her emotional and physical conditions. She is able to form and maintain friendships with others. She is able to travel alone and perform chores.

AR 132.

Ms. Herrera argues that the ALJ "failed to consider" her subjective allegations of pain and other symptoms. Doc. 18 at 23. She argues that "[i]n determining the limiting effects of a claimant's severe fibromyalgia, an ALJ may not rely on a lack of clinical or objective signs." Doc. 18 at 24. She cites *Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004), for the proposition that "fibromyalgia is diagnosed entirely on the basis of patient's reports and other symptoms." *Id.* (internal quotation marks omitted). She argues that the ALJ should have credited her testimony at the hearing, describing days when she could not get out of bed because of pain. *Id.* at 25 (citing AR 221). On days she has pain, the most she can do is "a little bit" of walking around. *Id.* (citing AR 222-23). She requires assistance with chores and caring for her pet. *Id.* (citing AR 221). On some days she feels like she cannot breathe and she can't go anywhere. *Id.* (citing AR 224). Ms. Herrera also refers to the assessments from her treating provider, Dr. Schwartz. *Id.* (citing AR 673, 1831-33).

The Tenth Circuit has acknowledged the difficulty of analyzing fibromyalgia. *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) ("Because proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims." (internal quotation marks and alterations omitted)). But as described above, the Social Security Administration has ruled that subjective symptom evidence with respect to fibromyalgia must be evaluated like any other subjective symptom evidence. SSR 12-2p, 2012 WL 3104869, at *5. Nor has the Tenth Circuit adopted the rule urged by Ms. Herrera that, due to the subjective nature of the disease, a claimant's subjective symptom evidence must automatically be credited.

In *Newbold v. Colvin*, the Tenth Circuit affirmed an ALJ's decision to give "diminished weight" to a "fibromyalgia questionnaire" completed by a treating physician. 718 F.3d 1257, 1265-66 (10th Cir. 2013). The ALJ found the doctor's opinion to be inconsistent with the claimant's activities of daily living, which included "car[ing] for her own personal needs; do[ing] household chores, i.e., dishes, vacuuming; cooking; texting friends; using a computer; driving; grocery shopping; reading; watching television; visiting with friends; attending church on a weekly basis; and, attending church activities one night a week." *Id.* at 1266. In addition, the ALJ found the opinion internally inconsistent. *Id.* "In the questionnaire, Dr. McMillan opined that Ms. Newbold could not prepare and eat a simple meal or carry out routine ambulatory activities such as shopping or banking." *Id.* "But in a separate medical record from the same date, he indicated that Ms. Newbold is able to take care of herself and perform her activities of daily living." *Id.* (internal quotation marks omitted).

The Tenth Circuit also affirmed the ALJ's rejection of the claimant's subjective symptom evidence, *id.* at 1267-68, although it did not specifically discuss the relationship between that evidence and the claimant's impairment of fibromyalgia. The ALJ in that case discounted the

subjective symptom evidence because the claimant "has had no persistent neural deficits, she has required no narcotic pain medication for her body aches, she has used only over-the-counter pain medication for her severe migraine headaches, she has experienced no medication side effects, she has required no hospitalizations, she has undergone no physical therapy, she uses no assistive devices to ambulate and she has undergone no mental health treatment." *Id.* at 1267 (alterations omitted). "The ALJ also noted that, on two separate occasions since November 2007, Ms. Newbold had expressed an interest in returning to work and school. Moreover, as the ALJ reasonably pointed out, for fourteen months, from April 2007 until June 2008, Ms. Newbold did not receive treatment from Dr. McMillan, the physician primarily responsible for managing her fibromyalgia." *Id.* at 1267-68 (citation omitted). This was sufficient to affirm. *Id.*

As Ms. Herrera argues, unpublished decisions on the topic have suggested that an ALJ may not analyze an impairment of fibromyalgia solely with reference to whether there is objective medical evidence in the record. In *Gilbert v. Astrue*, the Tenth Circuit reversed an ALJ's rejection of a treating physician's opinion about the functional limitations resulting from fibromyalgia when that rejection was based on a lack of objective evidence and the ALJ had failed to address the non-objective evidence that supported the treating opinion. 231 F. App'x 778, 783-84 (10th Cir. 2007). The court also reversed the ALJ's credibility determination because the claimant's testimony was consistent with her doctor's opinions, and because "the ALJ's assessment of Dr. Kassan's opinions and Ms. Gilbert's credibility were substantially intertwined." *Id.* at 784-85.

But other unpublished decisions hold that an ALJ may reject a treating physician's opinion about the functional limitations resulting from fibromyalgia as long as the ALJ cites some additional record evidence such as the claimant's activities of daily living. For example, in

*Tarpley v. Colvin*, the ALJ permissibly rejected the treating physicians' opinions where the plaintiff had full range of motion in her joints, had normal strength, walked and moved without much difficulty, had been able to care for her personal needs, did household chores, went shopping, found relief with medication, and on her doctors' recommendations, stayed active with friends and family. 601 F. App'x 641, 643 (10th Cir. 2015). *Romero v. Colvin* applied these principles to the ALJ's evaluation of subjective symptom evidence. 563 F. App'x 618 (10th Cir. 2014). It explained that, "to the extent that the ALJ discounted Ms. Romero's fibromyalgia because of benign medical test results, she appears to have erred," but found that it was permissible for the ALJ to rely on the plaintiff's daily activities and her statements that she experienced relief from medication and exercise as prescribed by her doctor. *Id.* at 621-22.

The Court finds that, pursuant to this line of cases, the ALJ's discussion was sufficient. The ALJ cited evidence that (1) Ms. Herrera's statements that medications are helpful and control her symptoms;[15] (2) she is quite active;[16] (3) she is able to form and maintain friendships with others;[17] (4) she is able to travel alone;[18] and (5) she is able to perform chores.[19] AR 132.

---

[15] The ALJ explained that "[t]he claimant's mood and anxiety were under control with current medications" in September 2014. AR 130 (citing AR 1376). He noted that she "indicated good help for her mental illness from her medications" in August 2016. AR 131 (citing AR 1616-18).

[16] The ALJ described these activities as: "the claimant can perform household chores, prepare meals, go to doctor's appointments, take medications, shop, drive, watch television, and read." AR 126 (citing AR 604-611, 626-33, 658-65, 667-74). The ALJ also cited evidence that in February 2017, "the claimant was noted to be independent in all activities of daily living, and under 'activity status,' the claimant indicated 'no problem'." AR 128-29 (citing AR 1806).

[17] The ALJ found that "the claimant is also able to shop, spend time with friends and family, and live with others." AR 126.

[18] *See* AR 662, 670.

[19] The ALJ found that "the claimant is able to handle self-care and personal hygiene, and perform activities of daily living." AR 127. "[T]he claimant and her husband also indicated that

These reasons are very similar to the reasons given in the cases where the ALJ's decision was affirmed. *Newbold*, 718 F.3d at 1267-68; *Gilbert*, 231 F. App'x at 783-85; *Tarpley*, 601 F. App'x at 643; *Romero*, 563 F. App'x at 621-22.

Ms. Herrera emphasizes that her function reports "indicated severe pain and fatigue affecting her ability to cook and complete household tasks." Doc. 18 at 6 (citing AR 568, 570-71, 626). In the cited pages, however, Ms. Herrera does not indicate that she cannot cook or complete household tasks. She indicates only that sometimes it is hard. AR 570. This is not "overwhelming" evidence that undermines the ALJ's finding that Ms. Herrera can still perform basic household tasks. AR 126. The Court thus finds that the ALJ's reasons for discounting Ms. Herrera's evidence of pain are sufficiently linked to substantial evidence. *Cf. Huston*, 838 F.2d at 1133; SSR 16-3p, 2016 WL 1119029, at *2.

## IV.  Conclusion

For the reasons stated above, Ms. Herrera's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 18) is **DENIED.**

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**

---

she was able to attend to selfcare tasks, cook simple meals, clean, do laundry, mop, shop, drive, read, and watch television." AR 128 (citing AR 604-611, 626-33, 658-65, 667-74).